**D.A.S., Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**In the Interest of O.J.S., A.S.S., and D.A.S., Jr., Children.**

**No. 92SC646.**

Supreme Court of Colorado, En Banc.

Nov. 15, 1993.

Rehearing Denied Dec. 6, 1993.

Cynthia M. Mardian, Denver, for petitioner.

Daniel E. Muse, City Atty., Laura Grzetic Eibsen, Asst. City Atty., Denver, for respondent.

Allen B. Alderman, Denver, guardian ad litem, for the children.

Chief Justice ROVIRA delivered the Opinion of the Court.

In this appeal, D.A.S. (the mother) contends that the court of appeals erred in affirming the judgment of the juvenile court which terminated her parental relationship with her children (O.J.S., A.S.S., and D.A.S., Jr. (Jr.)).[1] The mother argues that reversal is necessary because the testimony of a psychologist and his report were admitted into evidence at the termination hearing in violation of the attorney-client privilege. We affirm.

I

On April 29, 1987, the Colorado Department of Social Services (department) filed a dependent or neglected children petition with the City and County of Denver juvenile court on behalf of Jr. The petition alleged that Jr. had been placed in a shelter by Denver Police Department personnel after the staff at the United Cerebral Palsy Center, a therapeutic preschool attended by Jr., noticed severe bruising on his back, buttocks, and thighs as well as bruising on his ear and cheek. The petition stated that termination of the parent-child relationship may be a possible remedy should the petition be sustained by the juvenile court.

The juvenile court appointed a guardian ad litem to represent Jr. and accepted the mother's admission that his home environment was injurious to his welfare. The court sustained the petition and adjudicated Jr. a dependent and neglected child. Jr. then was placed in the department's custody and began residing in a foster care home. A dispositional hearing was set for May 29, 1987, at which time a treatment plan for the mother was adopted by the court.

On September 23, 1987, the department filed a dependent or neglected children petition with the juvenile court concerning O.J.S. and A.S.S. in order to bring the two children under the court's jurisdiction. The court sustained the petition and adjudicated O.J.S. and A.S.S. dependent and neglected children. The court adopted the same treatment plan as the one that earlier was adopted, with the additional requirement that the mother maintain a stable source of income.

On October 12, 1987, O.J.S. and A.S.S. sustained second and third degree burns in a fire that broke out in the apartment they

1. Though many of the juvenile court's orders applied to the father as well as the mother, the father did not seek certiorari review of the court of appeals opinion. Consequently, we focus primarily on the juvenile court's orders as they apply to the mother.

were living in with their parents. After their release from the hospital, they were placed in foster care.

In November 1989, the department moved to terminate the parent-child legal relationship among both parents and their three children. The department alleged that both the mother and father failed to comply with the treatment plan, they were unfit as parents, the treatment plan had been unsuccessful at rehabilitating the parents, and the parents' conduct was unlikely to change within a reasonable time.

Thereafter, the mother requested the trial court to appoint Dr. Richard Spiegle, a clinical psychologist, as her independent expert witness pursuant to section 19–3–607(1), 8B C.R.S. (1993 Supp.).[2] The motion stated, in relevant part, that "[f]or the purpose ·of the termination hearing set for February 5, 1990, the [mother] requests the appointment of Dr. Richard Spiegle to conduct an evaluation of the [mother] and her relationship with the minor children...." The motion was granted and the evaluation began in August of 1990. Dr. Spiegle met alone with the mother four times for clinical interviews and testing. On one occasion, he met with the mother and the children for a parent-child interactional evaluation. In addition, Spiegle obtained relevant documents and information from persons involved in the case. Based on this information, he prepared a written report.

At trial, the mother elected neither to call Spiegle as a witness nor submit his report into evidence. The guardian ad litem, however, sought to call Spiegle to testify and introduce his report into evidence. The mother objected. Relying on *B.B. v. People*, 785 P.2d 132 (Colo.1990), she argued that the attorney-client privilege protected the testimony and report from disclosure.

The court admitted both the testimony and the report, concluding that *B.B.* was inapposite and that the children's involvement in the evaluation either negated any attorney-client privilege that might have existed or created an equal privilege in the children which only they could waive. Based on this and other evidence, the court terminated both the mother's and the father's parental relationship with their three children. Both parents appealed and the cases were consolidated.

The court of appeals affirmed, reasoning that the presence of the children at the parent-child interactional evaluation, the knowledge of the mother's attorney that the interactional evaluation would be undertaken, and the provisions of section 19–3–203(2), 8B C.R.S. (1993 Supp.),[3] support the conclusion that "the psychologist was appointed and hired under circumstances which prevented the creation of any attorney-client privilege." *People In the Interest of O.J.S., A.S.S., and D.A.S., Jr.*, 844 P.2d 1230, 1232 (Colo.App.1992).

The mother appeals arguing that (1) the attorney-client privilege attached to the testimony of Spiegle and the report prepared by him and (2) the request for and participation in the parent-child interactional evaluation did not amount to a waiver of the attorney-client privilege.

II

The mother claims a blanket privilege for all of the testimony of Spiegle and all of the information contained in his written report. As stated in her objection at trial, she invoked the "attorney-client privilege ... and object[ed] to [the] testimony of Dr. Spiegle and introduction of the report into evidence." It is important to note at the outset, however, that the privilege asserted

2. Section 19–3–607(1), 8B C.R.S. (1993 Supp.), provides, in pertinent part, that "[a]n indigent parent has the right to have appointed one expert witness of his own choosing whose reasonable fees and expenses, subject to the court's review and approval, shall be paid by the state of Colorado pursuant to section 19–3–610."

3. Section 19–3–203(2), 8B C.R.S. (1993 Supp.), provides, in part, that "[t]he guardian ad litem shall be provided with all reports relevant to a case submitted to or made by any agency or person pursuant to this article, including reports of examination of the child or persons responsible for the neglect or dependency of the child."

cannot possibly extend to all of the testimony and written conclusions of Spiegle.

■ Section 13–90–107(1)(b), 6A C.R.S. (1987), provides, in part, that "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon...." The testimony and report admitted at the request of the guardian ad litem was not limited to communications made by the mother to Spiegle and the advice given in response to those communications. Rather, a considerable amount of testimony concerned Spiegle's observations and conclusions regarding the children themselves. For example, he testified that the "children were affectionate, very needy, and the interactions [between them and the mother] were appropriate based on the level of disruption that the kids have experienced." He observed that "the kids were developmentally disabled themselves," and concluded that "based on their needs, they interacted appropriately" with the mother. In addition, Spiegle testified that the children "were very excited and energetic" and the need for discipline never arose. He testified to the children's cognitive difficulties, and the problems encountered while interacting with their caretaker as a result of their communicative and emotional troubles. He also concluded that based on the children's needs, as well as the inability of the mother to fulfill those needs, that the parent-child legal relationship should be terminated.

In short, much of the information to which the mother claims the attorney-client privilege has nothing to do with "communications made by the client to him [Spiegle]." Section 13–90–107(1)(b), 6A C.R.S. (1993 Supp.). Rather, a considerable amount of that testimony resulted from information obtained entirely outside the context of communications which are covered by the statutory attorney-client privilege. In the words of the trial court, Spiegle's testimony indicated "that he actually did an evaluation of the children—evaluated their needs, their delays. He evaluated the interaction between the children and the respondent mother."

Recognizing that the privilege asserted by the mother does not extend to all of the challenged testimony and conclusions of Spiegle, we turn to the narrower question of whether *any* of Spiegle's testimony or written conclusions are protected from disclosure under the attorney-client privilege. For the reasons that follow, we conclude that they are not.

A

The mother argues that the court of appeals erred in not applying the holding of *B.B.* to the facts of this case. She acknowledges that the burden of establishing the applicability of the attorney-client privilege rests with the claimant of the privilege, *Clark v. District Court*, 668 P.2d 3, 8 (Colo.1983), but asserts that this burden was met by her reliance on *B.B. v. People*, 785 P.2d 132 (Colo.1990).

In *B.B. v. People*, 785 P.2d 132 (Colo. 1990), we considered "whether a privilege exists between an indigent parent and an expert witness appointed by the court at the request of the parent under section 19–11–107(1), enabling the parent to prevent the expert from testifying on behalf of the People at the termination hearing." *Id.* at 133. After examining the need to provide a parent who faces termination of the parent-child legal relationship with fundamentally fair procedures as well as the underlying purposes of the attorney-client privilege, *id.* at 138–39, we concluded that "when an expert is appointed under section 19–11–107(1) for an indigent parent at the request of the parent's attorney, communications *between the parent and the expert* are protected by the attorney-client privilege." *Id.* at 138 (emphasis added).[4]

---

4. We note there is no indication in either the facts or holding of *B.B.* that the children were present during any portion of the evaluative process conducted by the appointed expert in that case. On its own terms, therefore, the holding of *B.B.* does not specifically address the question of whether the attorney-client privilege extends to communication among a parent, child, and appointed expert.

■ The privilege recognized in *B.B.* is not absolute, however. To the contrary, under a variety of circumstances the cloak of confidentiality afforded by the attorney-client privilege does not extend to particular communications between an attorney (or his agent) and a client. It is well-settled, for example, that the attorney-client "privilege applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Lanari v. People*, 827 P.2d 495, 499 (Colo.1992). "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." John W. Strong et al., *McCormick on Evidence* § 91, at 333 (4th ed. 1992).

Here, the mother's motion for a court appointed expert under section 19–3–607(1), 8B C.R.S. (1993 Supp.), expressly requested that Spiegle "conduct an evaluation of the [mother] and her relationship with the minor children...." The uncontroverted testimony at trial established that at the time the mother's attorney filed the motion requesting the appointment of Spiegle, she was aware that conducting a parent-child interactional evaluation was "standard procedure" for him. Moreover, at no time was a request made of Spiegle to forego his normal practice by refraining from conducting the parent-child evaluation. Thus, it is clear that from the very outset the mother was aware that at least some of the communications between herself and Spiegle would occur in the presence of the children. In addition, it is significant to note that Spiegle's report had been provided to all counsel involved in the termination proceeding prior to trial. This fact strongly suggests that, at least as far as Spiegle was concerned, the report prepared by him was not intended to be treated as confidential.[5]

■ The mother maintains, however, that her communications with Spiegle should be considered confidential irrespec-

tive of the presence of the children and in spite of the fact that the report had been distributed to all counsel prior to trial. The basis for this argument is the generally recognized rule that, although the presence of a third person ordinarily destroys the confidentiality required to assert the attorney-client privilege, that destruction "does not always occur when a person other than client and lawyer becomes a party to the communication if that person is needed to make the conference possible." 2 Jack B. Weinstein et al., *Weinstein's Evidence* 503(a)(4)[01] (1993). This exception has been applied in numerous contexts, all of which are factually distinguishable from the situation presented here.

For example, the presence of a third party has been found not to defeat the requirement of intended confidentiality where "the help of an interpreter is necessary to enable the client to consult the lawyer," or in cases "where the client has one of his agents attend the conference, or the lawyer calls in his clerk or confidential secretary." John W. Strong et al., *McCormick on Evidence* § 91 at 334–35 (4th ed. 1992). We are aware of no authority, however, where this exception has been found applicable when a party that is represented by independent counsel is the third party who is present during the communications at issue. Thus, while we acknowledge that the presence of third parties does not necessarily negate a finding of intended confidentiality if the presence of that party is necessary for the consultation to occur, given the fact that the children themselves are parties to this action and represented by counsel, we believe that the mother could not have had a reasonable expectation that her communications with Spiegle would be confidential.

Moreover, even assuming that this exception to the general rule is applicable when the third person who is privy to the communication is also a party to the litigation, we conclude that the mother has failed to establish, and the record does not support the

---

**5.** The mother's attorney stated that she did not distribute the report herself and assumed that it

was Spiegle who must have disseminated it.

finding, that the presence of the children was necessary to make Spiegle's evaluation possible.

The only testimony at trial concerning the reasons why the presence of the children was needed was that in Spiegle's opinion, conducting a parent-child interactional evaluation was an "appropriate" procedure for determining the mother's fitness as a parent, and a procedure which was "standard" for Spiegle to conduct. The record is devoid of any evidence which establishes that a parent-child interactional evaluation is necessary in order for a court appointed expert to properly assist in mounting an effective defense against a possible termination of the parent-child legal relationship, and Spiegle's testimony establishes only that such an evaluation was considered by him to be appropriate and one he routinely utilized. Consequently, we reject the mother's argument that the presence of the children did not violate the requirement that communications be confidential in order for the attorney-client privilege to attach.

We conclude, therefore, that the attorney-client privilege did not attach given the fact that: (1) much of the information to which the privilege is claimed did not fall within the scope of that privilege; (2) the mother's attorney knew, prior to appointment of Spiegle, that a parent-child interactional evaluation would likely be conducted; (3) no request was made to forego that evaluation; (4) the children participated in Spiegle's evaluation of the mother and themselves; (5) the children's participation in the evaluative process was not required in order to make Spiegle's evaluation possible; and (6) Spiegle's report had been disseminated to opposing counsel prior to trial.

Accordingly, we reject the mother's contention that the court of appeals erred in affirming the juvenile court's ruling that the attorney-client privilege did not attach to the testimony and report of Spiegle.

JUDGMENT AFFIRMED.

LOHR, J., dissents.

KIRSHBAUM and SCOTT, JJ., join in the dissent.

Justice LOHR dissenting:

The majority holds that the testimony and report of a psychologist appointed as an expert witness by the court pursuant to section 19–3–607, 8B C.R.S. (1993 Supp.), on the motion of an indigent parent can be presented in evidence by the People over the parent's objection at a hearing to determine whether the parental rights of the objecting parent with respect to her minor children should be terminated. I respectfully dissent.

I.

In proceedings in the Juvenile Court of the City and County of Denver, on the petition of the Denver Department of Social Services (department), the court adjudicated three minor children, the oldest of whom was three years of age, to be dependent and neglected with respect to both their parents and adopted treatment plans in an effort to remediate the deficiencies in the care of the children. The department later moved to terminate the parental rights of both parents with respect to the children, alleging, among other things, that the parents had failed to comply with the treatment plans.

In order to assist her in preparation for the termination hearing, the mother, who was indigent and represented by appointed counsel, moved for the appointment of Dr. Richard Spiegle, a clinical psychologist, as an expert witness of her own choosing pursuant to section 19–3–607(1), 8B C.R.S. (1993 Supp.). The court granted the motion, and Dr. Spiegle met with the mother on five occasions for interviews and testing and on another occasion met with the mother and the children for an evaluation of their interaction. Based on information gathered at those sessions, as well as information obtained from other sources, the doctor prepared a written report.

At the termination hearing, the mother did not call Dr. Spiegle as a witness nor did

she offer his report into evidence. The guardian ad litem for the children, however, called the doctor as a witness and offered his report. The mother objected to both the testimony and the report as protected by the attorney-client privilege. The court overruled the objections, received the tendered testimony and report, and terminated the parental relationship between the mother and her young children.[1] The Colorado Court of Appeals affirmed. *People in the Interest of O.J.S., A.S.S., and D.A.S., Jr.*, 844 P.2d 1230 (Colo.App.1992). We granted certiorari to review the court of appeals' determination that the trial court properly received the doctor's testimony and report over the mother's objection based on the attorney-client privilege.

## II.

The majority holds, first, that much of the information as to which the mother claimed the attorney-client privilege was not within the scope of that privilege and, second, that the privilege is inapplicable in any event because the mother participated without objection in an interactional evaluation session involving the three children. The presence of the three young children, the majority holds, destroyed the confidentiality required to assert the attorney-client privilege and thus abrogated any privilege that might otherwise have existed. I disagree with both holdings on which the majority bases its rejection of the mother's claim of privilege in this case.

## A.

I first address the majority's holding that the attorney-client privilege that arises between a parent and an expert witness appointed to represent the parent under section 19-3-607(1) "cannot possibly extend to all of the testimony and written conclusions of Spiegle." Op. at 294.

Section 19-3-607(1) provides in pertinent part, "An indigent parent has the right to have appointed one expert witness of his own choosing...." In *B.B. v. People*, 785 P.2d 132 (Colo.1990), we held that "when an expert is appointed under section 19–11–107(1) [now appearing at § 19–3–607(1)] for an indigent parent at the request of the parent's attorney, communications between the parent and the expert are protected by the attorney-client privilege." *Id.* at 138. In reaching that conclusion, we recognized that "[a] natural parent ... has a fundamental liberty interest in the care, custody and management of his or her child." *Id.* at 136 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); *People in the Interest of A.M.D.*, 648 P.2d 625, 632 (Colo.1982)). It is essential, therefore, "that a state accord fundamentally fair procedures to a parent when the state seeks to terminate a parent-child legal relationship." *B.B.*, 785 P.2d at 136 (citing *Santosky*, 455 U.S. at 753–54, 102 S.Ct. at 1394–95; *A.M.D.*, 648 P.2d at 632).

In order to provide such procedures, and in recognition of the severity of the consequence of termination of parental rights, the General Assembly adopted the Parent–Child Legal Relationship Termination Act of 1987 (the Act), §§ 19–3–601 to –610, 8B C.R.S. (1993 Supp.), of which section 19–3–607(1) is a part. *See B.B.*, 785 P.2d at 136–37. The Act contains detailed criteria for termination of parental rights, and "due process requires that the grounds for termination of parental rights be established by clear and convincing evidence." *Id.* at 137 (citing *Santosky* and *A.M.D.* for burden of proof standard). Section 19–3–607(1) "is part of the complex statutory scheme designed to accord fundamental fairness to all parties in parental rights termination proceedings." *B.B.*, 785 P.2d at 137.

We observed in *B.B.* that an indigent parent facing termination of parental rights is disadvantaged by the inability to hire expert assistance, whereas the state has resources at its disposal to prepare its

---

1. The court also terminated the parental relationship between the father and the children; that determination is not before us for review.

case, and that "[i]t is apparent that section 19–11–107(1) [19–3–607(1)] was enacted in an effort to rectify this imbalance." *Id.* at 138. We noted that an indigent parent has a right to appointment of counsel in termination of parental rights proceedings, § 19–3–602(2), 8B C.R.S. (1993 Supp.), and that in order to provide effective assistance, counsel must have access to expert advice and assistance in evaluating the fitness of the parent. *B.B.*, 785 P.2d at 138.

Section 13–90–107(1)(b), 6A C.R.S. (1987), articulates the attorney-client privilege and delineates its scope, as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

In *Miller v. District Court*, 737 P.2d 834 (Colo.1987), we recognized that the privilege extends to communications between the client and agents of the attorney and that "a psychiatrist retained by defense counsel to assist in the preparation of the defense is an agent of defense counsel for purposes of the attorney-client privilege." *Id.* at 838. In *B.B.* we held that the reasoning of *Miller* applies as well to parental rights termination proceedings. We stated:

> Were the attorney-client privilege not applicable to the present case, an indigent parent would be presented with a dilemma. The parent either could forego the assistance of an expert, with a resulting impairment of the parent's ability to evaluate and counter the People's evidence, or could obtain appointment of an expert, and run the risk that the expert would obtain information and form opinions adverse to the parent's interest and that the People could then elicit the expert's testimony to support their own case. To put the parent to such a choice would defeat the very purpose of section 19–11–107(1)—to enable an indigent parent to obtain assistance from an expert of the parent's own choosing at state expense in preparing a defense against the People's efforts to terminate the parent-child relationship.

*B.B.*, 785 P.2d at 139.

The majority, however, confines the holding of *B.B.* to communications between the mother and the psychologist and holds that opinions of the psychologist based on "observations of and conclusions regarding the children themselves," op. at 294, and their interaction with their mother are outside the pale of the privilege. This cramped reading of *B.B.* ignores its philosophical underpinnings and seriously erodes the protections it was intended to provide to indigent parents facing the loss of a fundamental liberty interest in the care, custody, and management of their children. The essential purpose of *B.B.*, and of *Miller*, is to provide the indigent person with expert advice and assistance on issues central to the case and minimize the adverse effect of the disparity in the resources available to the state and to the person for whom the expert assistance is made available. In order to effectuate this purpose, I would hold that the confidential "communications" protected under our holding in *B.B.* consist not only of verbal communications but of all information provided by the parent to the expert that the expert reasonably requests in order to accomplish a full and effective evaluation relevant to the issues in a termination of parental rights proceeding. Information obtained by observing the interaction of the parent and children is easily encompassed within the scope of the privilege by application of that standard.

B.

The majority goes on to hold, more broadly, that the participation of the children in the interactive evaluation, a part of the evaluative process that the mother's attorney knew in advance to be likely, prevented the attorney-client privilege from arising because it destroyed the confidentiality required to assert that privilege. I disagree.

The majority first reasons that because the mother requested in her motion for appointment of the expert psychologist that he conduct an evaluation of her relationship with her minor children, the expectation of confidentiality which provides the basis for recognition of the attorney-client privilege was not present. This is so, the majority states, because "the mother was aware that at least some of the communications between herself and Spiegle would occur in the presence of the children." Op. at 295. That the presence of the children would destroy the mother's expectation of confidentiality strains credulity. The children were ages four, five, and six at the time of the evaluation. And, at the meetings, as Dr. Spiegle reported, "[t]hey just visited together and sat on [their mother's] lap and talked and joked...." Factually, the majority's loss of confidentiality analysis is most unpersuasive.

Legally, the majority's analysis is flawed as well. The majority concedes that destruction of confidentiality " 'does not always occur when a person other than client and lawyer becomes a party to the communication if that person is needed to make the conference possible.' " Op. at 295 (quoting 2 Jack B. Weinstein et al., *Weinstein's Evidence* § 503(a)(4)[01] (1993)). It rejects the application of that principle to the presence of the children at the interactive evaluation on two bases. First, the children were represented by counsel. Op. at 295. Second, "the record does not support the finding, that the presence of the children was necessary to make Spiegle's evaluation possible." *Id.* I fail to grasp the significance of the children's representation by counsel. Nothing in the record suggests that the children's counsel requested access to the doctor's report or to be advised of his findings or in any way objected to participation of the children in a confidential interactive evaluation. As to the majority's conclusion that the presence of the children was not necessary, it imposes an inappropriately high standard. As the majority concedes, there is evidence that conducting a parent-child interactive evaluation was an " 'appropriate' procedure for determining the mother's fitness as a parent, and a procedure which was 'standard' for Spiegle to conduct." Op. at 296. Nothing more should be required. The legislative purpose for providing expert assistance to an indigent parent would not be served if such an expert is denied the ability to obtain data appropriate to the development of a fully informed opinion. The fact that such a procedure was "standard" for Dr. Spiegle strongly suggests its importance. We should not lightly second guess the opinion of such a witness as to the scope of the evaluative activities appropriate to arrive at a fully informed opinion. I would hold that the presence of the children was needed to make the conference possible and therefore that confidentiality was not compromised and the attorney-client privilege remained intact.

In further support of its determination that no confidentiality was intended, the majority notes that Dr. Spiegle's report was provided to all counsel involved in the termination proceeding prior to its admission at trial. The majority states that dissemination of the report, presumably by Dr. Spiegle himself, "strongly suggests that, at least as·far as Spiegle was concerned, the report prepared by him was not intended to be treated as confidential." Op. at 295. Dr. Spiegle's post-analysis actions, however, cannot be read as evidence of an intention on the part of the mother not to hold the communications confidential. The attorney-client privilege is personal with the client and thus may be waived only by the client herself. *Losavio v. District Court In and For Tenth Judicial District*, 188 Colo. 127, 132–133, 533 P.2d 32, 35 (1975). The burden of establishing a waiver is on the party seeking to overcome the claim of privilege. *Clark v. District Court, Second Judicial Dist., City and County of Denver*, 668 P.2d 3, 8 (Colo.1983). Waiver of the privilege must be established by evidence showing that the privilege holder herself has expressly or impliedly forsaken her claim of confidentiality with respect to the information in question. *Id.* There is no evidence in the record that the mother authorized or assented to distribution of the report. In

fact, when the report was offered in evidence, her attorney disavowed having distributed the report and said that "if somebody else has a copy, I assume they received it directly from [Dr. Spiegle]." In short, the record does not support a conclusion that distribution of Dr. Spiegle's report vitiated or impaired the mother's claim of confidentiality.

## III.

Finally, I believe it necessary to address that portion of the court of appeals' opinion relying in part on section 19–3–203(2) for rejection of the mother's claim of privilege in this case.[2] That section provides in pertinent part:

> The guardian ad litem shall be provided with all reports relevant to a case *submitted to or made by any agency or person pursuant to this article,* including reports of examination of the child or persons responsible for the neglect or dependency of the child. . . .

Section 19–3–203(2), 8B C.R.S. (1993 Supp.) (enacted as of 1987, ch. 138, sec. 1, § 19–3–203, 1987 Colo.Sess.Laws 695, 761) (emphasis added). The court of appeals, without detailed analysis, determined that this section required that communications between the mother and the psychologist be disclosed to the guardian ad litem in the present case, with the result that the attorney-client privilege was abrogated. The wording of this section has been in existence since 1975, yet has never been held to abrogate the attorney-client privilege applicable to communications between a parent and an expert appointed to assist the parent under section 19–3–607(1). Rather, it is intended to negate the testimonial privilege of those classes of persons listed within the article.

The reports referred to in section 19–3–203(2) are the reports of suspected child abuse or neglect required to be made by certain classes of professionals and other persons. Among the persons so classified are psychologists. Section 19–3–304(2)(p), 8B C.R.S. (1993 Supp.). The psychologist-

client privilege has thereby been abolished to the extent necessary to allow reporting of suspected child abuse. The privilege operating in this case, and in *B.B.,* however, is the attorney-client privilege not the psychologist-client privilege. As in *B.B.,* information obtained by Dr. Speigle "was not for purposes of diagnosing or treating [the mother] but rather to assist [the mother] in pending litigation, and thus was not within the psychologist-client privilege." *B.B.,* 785 P.2d at 140.

Attorneys are not among the classes of persons required by section 19–3–304 to report suspected child abuse or neglect. The legislature must have meant the attorney-client privilege to remain intact. Within the Child Protection Act of 1987, §§ 19–3–301 to –316, 8B C.R.S. (1993 Supp.), section 19–3–311, which specifically lists evidence not privileged, is entirely consistent with this legislative intent. Again, only evidence gathered by certain of those classes of persons listed in section 19–3–304 is included:

> The incident of privileged communication between patient and physician, between patient and registered professional nurse, or between any person licensed pursuant to article 43 of title 12, C.R.S. [concerning licensure of mental health professionals], or certified school psychologist and client, *which is the basis for a report pursuant to section 19–3–304,* shall not be a ground for excluding evidence in any judicial proceeding resulting from a report pursuant to this part 3. . . .

Section 19–3–311(1), C.R.S. (1993 Supp.) (emphasis added).

No section within the Child Protection Act evinces an intent to abrogate the attorney-client privilege. To hold otherwise would obliterate the privilege recognized in *B.B.* The reliance by the court of appeals on section 19–3–203(2) in rejecting the mother's claim of privilege was therefore erroneous.

---

**2.** As we have previously indicated, evaluation by an expert appointed under § 19–3–607(1), 8B C.R.S. (1993 Supp.), does not amount to an "ordered evaluation" that must be provided to all parties pursuant to § 19–3–607(2). *See B.B.,* 785 P.2d at 135 n. 5.

 

For all of the above reasons, I respectfully dissent.

KIRSHBAUM and SCOTT, JJ., join in this dissent.