24CA0167 Peo in Interest of NR 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0167 Otero County District Court No. 23JV30007 Honorable Samuel S. Vigil, Judge The People of the State of Colorado, Appellee, In the Interest of N.R. and E.A.R., Children, and Concerning V.V., Appellant. JUDGMENT AFFIRMED Division A Opinion by JUDGE RICHMAN* Román, C.J., and Graham*, J., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Kim R. Verhoeff, Lamar, Colorado, for Appellee Jenna L. Mazzucca, Guardian Ad Litem Patrick R. Henson, Office of Respondent Parents’ Counsel, Chelsea A. Carr, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant. *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this dependency and neglect proceeding, V.V. (mother) appeals the juvenile court’s judgment terminating her parent-child legal relationship with N.R. and E.A.R. (the children). We affirm. I. Background ¶ 2 In March 2023, the Otero County Department of Human Services filed a petition alleging that the children were dependent or neglected after it received reports that the children’s parents were smoking fentanyl in the children’s presence. The children, who were four and one year old at the time, both tested positive for methamphetamine after they were removed from the home. As relevant here, mother admitted the petition, and the children were adjudicated dependent or neglected. The juvenile court then adopted a treatment plan for mother. ¶ 3 Two months later, L.R., a paternal relative living in Florida, requested that the Department consider her as a kinship placement provider for the children. In September 2023, the Department moved to terminate mother’s parental rights due to her lack of compliance with her treatment plan. After a hearing, the juvenile court granted the motion. 
2 II. Termination Framework and Standard of Review ¶ 4 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent’s conduct or condition is unlikely to change in a reasonable time. 19-3-
604(1)(c), C.R.S. 2023. Implicit in the statutory scheme for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo. 1986). ¶ 5 When, as in this case, a child was less than six years old when they were removed from the home, the expedited permanency planning (EPP) provisions apply and require the juvenile court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2023; People in Interest of M.T., 121 P.3d 309, 313 (Colo. App. 2005). ¶ 6 Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves 
3 application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. We review the court’s factual findings for clear error. Id. But we review de novo the court’s legal conclusions. People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. III. No Less Drastic Alternative ¶ 7 Mother contends that the juvenile court erred when it concluded that no less drastic alternatives to termination existed. Specifically, she asserts that sections 19-3-403(3.6)(a)(V), C.R.S. 2023, and 19-3-702(5)(e), as amended by House Bill 23-1024, required the court to consider L.R. as a placement provider for the children. Relatedly, mother asserts that the Department should have completed an Interstate Compact for the Placement of Children (ICPC) home study for L.R., and that without the home study, there was insufficient evidence for the court to conclude that no less drastic alternatives to termination existed. We are not convinced. A. Additional Facts ¶ 8 L.R. had previously taken custody of one of the children’s older siblings. In June 2023, L.R. contacted the caseworker to tell 
4 her that the sibling, who was fourteen or fifteen years old at the time, had actually left L.R.’s home. Indeed, the sibling left about one year earlier, and no one knew where she had gone or where she currently lived. The caseworker, whom the court qualified as an expert in child protection, testified that she was concerned about the sibling’s safety and reported the situation to the Florida department of human services. The Florida department did not investigate the matter. ¶ 9 The record does not indicate that L.R. made any further contact with the Department. Nor did the Department proceed with an ICPC home study to facilitate the children’s placement with L.R. in Florida B. Relevant Law ¶ 10 On August 6, 2023, House Bill 23-1024 took effect. The new law requires the juvenile court to give placement preference to a “relative or kin who is capable, willing, and available for care [of children in a dependency proceeding]” at various stages of the case. See e.g., § 19-3-403(3.6)(a)(V) (at the temporary custody hearing); § 19-3-508(1)(b), C.R.S. 2023 (at the dispositional hearing); § 19-3-
702(5)(e) (at permanency hearings). In making this determination, 
5 the court must give “primary consideration to the [children’s] mental, physical, and emotional needs.” § 19-3-403(3.6)(a)(V) (at the temporary custody hearing); § 19-3-508(1)(b), C.R.S. 2023 (at the dispositional hearing); § 19-3-702(5)(e) (at permanency hearings). ¶ 11 The juvenile court is not required to place the children with relatives or kin at these stages. For instance, at a temporary custody hearing, a “court may place or continue custody with the county department of human or social services if the court is satisfied from the information presented at the hearing that such custody is appropriate and in the child’s or youth’s best interests..” § 19-3-403(3.6)(a)(V). Similarly, at the dispositional hearing, placement with a capable, willing, and available relative is presumed to be in the child’s best interest, but that presumption may be rebutted by a preponderance of the evidence. See § 19-3-
507(1)(b.5), C.R.S. 2023 (dispositional hearings). ¶ 12 The bill did not amend the termination statute, section 19-3-
604, and it did not discuss less drastic alternatives. When considering less drastic alternatives, the juvenile court must base its decision on the best interests of the child, giving primary 
6 consideration to the child’s physical, mental, and emotional conditions and needs. See § 19-3-604(3). A court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether the alternative option provides the child with adequate permanency or meets the child’s needs. People in Interest of T.E.M., 124 P.3d 905, 910 (Colo. App. 2005). ¶ 13 To be viable, a less drastic alternative must do more than “adequately” meet a child’s needs; instead, the less drastic alternative must be in the child’s best interests. A.M., ¶ 27. If the court considers a less drastic alternative but nevertheless finds that termination is in the child’s best interests, it must reject the less drastic alternative and order termination. A.M., ¶ 32. C. Analysis ¶ 14 As an initial matter, we disagree with the parties that mother’s contention was preserved. While mother’s counsel indicated in closing arguments that an allocation of parental responsibilities to L.R. was a potential less drastic alternative to termination, she did not argue to the juvenile court that it was required, by the changes enacted through House Bill 23-1024, to prioritize or reinstate an 
7 investigation of L.R. as placement alternative for the children. Similarly, although mother’s counsel specifically relies on the joint trial management certificate filed in this case in her closing argument, that document does not mention the bill. Because mother did not place the juvenile court on notice of this issue, she did not preserve this issue for our review. See Berra v. Springer & Steinberg, P.C., 251 P.3d 567, 570 (Colo. App. 2010) (to preserve an issue for appeal, a party must bring the issue to the district court’s attention so the court has an opportunity to rule on it). ¶ 15 Furthermore, even if the issue had been preserved, mother does not explain on appeal how the bill’s amendments apply to a juvenile court’s less drastic alternative determination at termination. As noted above, the bill does not amend or discuss the termination statute and it does not include reference to less drastic alternatives. Insofar as mother relies on section 19-3-702(5)(e), which applies to permanency hearings, she points to no evidence, nor could we locate any, that the court considered this termination hearing to be a permanency hearing. See People in Interest of M.B., 70 P.3d 618, 623 (Colo. App. 2003) (permanency hearings and termination hearings are separate proceedings that may overlap). 
8 However, even assuming section 19-3-702(5)(e) applied, the caseworker’s expert testimony that the children were unlikely to be safe in L.R.’s home indicates that the court applied the required statutory criteria. Similarly, written notice of the Department’s rationale for rejecting L.R. for placement, as required by 19-3-
702(5)(e), was provided to all parties at the permanency hearing several months earlier. See § 19-3-702(5)(e) (“The department shall also report any decision regarding placing the child or youth with a relative or kin.”). ¶ 16 Finally, while an ICPC home study would have provided more information about L.R.’s home, the Department would not have been bound by the resulting ICPC assessment to place the child with L.R. Instead, the Department would have had fourteen days to determine whether the placement was appropriate. See Dep’t of Human Servs. Rule 7.307.51, 12 Code Colo. Regs. 2509-4. ¶ 17 The record shows that the juvenile court explicitly gave “primary consideration to the physical, mental and emotional conditions and needs of the children” when considering less drastic alternatives. The court concluded that the Department, after exploring family members, had not “found a safe relative placement 
9 for the child[ren].” Moreover, the court found that the children “require permanency due to their young age.” ¶ 18 The record supports these findings. The caseworker testified that she had investigated at least three kinship placements — F.V., J.M., and D.A. F.V. was ruled out because the caseworker opined that the children would not be safe in her home because she had “multiple children” removed from her home “as a result [of] no protective action from the adults.” She disqualified J.M. for safety concerns; he had convictions for domestic violence and protection order violations. And D.A. declined to be considered for placement. ¶ 19 As for placement with L.R., the caseworker repeatedly testified that she was concerned that the sibling had left the home at such a young age and that L.R. did not know how to locate her. Thus, as we mentioned above, the caseworker opined that L.R.’s home was likely not safe for the children. Moreover, the caseworker opined that adoption by the children’s foster parents was in their best interests because “it meets their permanency needs and mental, physical, [and] emotional well-being.” See T.E.M., 124 P.3d at 910. ¶ 20 Given this record support, and the fact that the young children in this EPP case had been out of home for nine months at 
10 the time of termination, the juvenile court did not err by concluding that were no viable less drastic alternatives rather than ordering the Department to wait for an ICPC study of L.R.’s home as a potential placement. IV. Judicial Notice ¶ 21 Mother also contends that the juvenile court erred when it took judicial notice of the entire case, including Exhibits CC through GG (the exhibits), and relied on unspecified hearsay within those exhibits. We perceive no basis for reversal. A. Relevant Law and Standard of Review ¶ 22 A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute if the fact is either (1) “generally known within the territorial jurisdiction of the trial court” or (2) “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” CRE 201(a)-(b). Because court records are recognized as sources whose accuracy cannot be reasonably questioned, a court may take judicial notice of them. People v. Sena, 2016 COA 161, ¶ 23. For example, “[a] court may take judicial notice of its own file, its findings of fact, and its conclusions of law.” See People in Interest of O.J.S., 844 P.2d 1230, 
11 1233 (Colo. App. 1992), aff’d sub nom. D.A.S. v. People, 863 P.2d 291 (Colo. 1993). We note however that in O.J.S., only the juvenile court’s previous findings of fact were at issue. See id. (father argues that “it is error for the court to take judicial notice of findings of fact made with regard to other phases of the proceedings”). ¶ 23 The court’s decision to take judicial notice of a fact is reviewed for an abuse of discretion. Vento v. Colo. Nat’l Bank, 985 P.2d 48, 52 (Colo. App. 1999). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. People in Interest of E.R., 2018 COA 58, ¶ 6. Nevertheless, an error in the admission of evidence is harmless if it does not affect a substantial right of a party. CRE 103(a); C.R.C.P. 61. An error affects a substantial right if it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the proceeding itself. People in Interest of R.J., 2019 COA 109, ¶ 22. ¶ 24 When the juvenile court is the trier of fact, we presume that it disregarded any immaterial or incompetent evidence that may have been introduced. People in Interest of J.A.S., 160 P.3d 257, 261 (Colo. App. 2007). Under these circumstances, we will not disturb 
12 the judgment unless the court could not have reached the result but for the incompetent evidence. People in Interest of M.M., 215 P.3d 1237, 1249-50 (Colo. App. 2009). B. Analysis ¶ 25 We acknowledge mother’s argument that the record contains an oral ruling by the juvenile court that it would take judicial notice of “the full file” in this case. Such a ruling is inconsistent with case law interpreting the allowable scope of judicial notice. See O.J.S., 844 P.2d at 1233. Nevertheless, the court’s final written order indicates that it considered only the adjudicative facts of the file. See Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist., 271 P.3d 587, 589 (Colo. App. 2011) (if ambiguity arises from a conflict between oral and written findings, it is the written order that controls). ¶ 26 True, as mother points out, the juvenile court took judicial notice of the exhibits in the final written order; these exhibits did not contain solely adjudicative facts. However, the court also took notice of these exhibits only “pursuant to CRE 201.” We assume that the court was guided by the limits provided in CRE 201 and 
13 that it disregarded incompetent evidence within those exhibits. See J.A.S., 160 P.3d at 261. ¶ 27 Finally, even if we were to agree that the juvenile court improperly relied on the parts of the court file and the exhibits, the testimony of the caseworker supports the court’s decision. ¶ 28 The caseworker testified that she made referrals for the services required in mother’s treatment plan. Nevertheless, mother was not successful with any of the plan’s objectives. Mother never signed releases of information for her treatment providers, and she did not provide verifiable certificates of completion for any classes to the caseworker. Mother missed many required urinalysis tests, and the caseworker had no knowledge that mother had ever appeared at the testing center. Mother attended only ten of the seventy-seven visits arranged for her since the case began. She had not visited the children, without explanation, within the last six months of the case. The caseworker opined that, under these circumstances, mother was not fit and would not become fit within a reasonable time. The caseworker opined that terminating mother’s parental rights was in the children’s best interest. 
14 ¶ 29 In sum, the record supports the juvenile court’s findings that mother had not complied with her treatment plan, was unfit and unlikely to become fit in a reasonable time, and that the Department provided reasonable efforts — conclusions mother does not appear to challenge on appeal. Thus, even if the court erred in taking judicial notice, the error did not affect mother’s substantial rights. V. Disposition ¶ 30 The judgment is affirmed. CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.