24CA0811 Peo in Interest of KVDW 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0811
Arapahoe County District Court Nos. 21JV344 & 22JV146
Honorable Victoria Ellen Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Kai.V.D.W., Kay.V.D.W., and B.V.D.W., Children,

and Concerning R.V.D.W. and S.V.D.W.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Ronald Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant R.V.D.W.

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant S.V.D.W.

¶ 1    In this consolidated dependency and neglect proceeding, S.V.D.W. (mother) and R.V.D.W. (father) appeal the juvenile court's judgment terminating their parent-child legal relationships with Kai.V.D.W., Kay.V.D.W., and B.V.D.W. (the children).  We affirm.

## I.    Background

¶ 2    In May 2021, the Arapahoe County Department of Human Services (Department) became involved with the family following concerns about mother's substance abuse.  Reports detailed that mother left the children in father's care for hours at a time even though father was not able to lift the children and was frequently fatigued due to his ongoing health issues.  Based upon these concerns, the Department initiated a petition in dependency and neglect for the children, Kai.V.D.W. and Kay.V.D.W.

¶ 3    The parents admitted the allegations in the petition and the children were adjudicated dependent and neglected.  The juvenile court then adopted a treatment plan for the parents.  While the case was pending, mother gave birth to B.V.D.W., who was born substance exposed.  A case was opened related to B.V.D.W.  The parents admitted the allegations in the petition, the child was

adjudicated, and treatment plans were entered for the parents in that case.

¶ 4     Later, the Department moved to terminate parental rights. After a five-day hearing spanning seven months, the court granted the motion.

## II.     Termination Criteria and Standard of Review

¶ 5     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 6     Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law

that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 7    However, we will not disturb the court's factual findings and conclusions when they have record support. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. The credibility of the witnesses as well as the sufficiency, probative value, and weight of the evidence, and the inferences and conclusions to be drawn from it are within the court's discretion. *A.M.*, ¶ 15.

### III.    Reasonable Efforts

¶ 8    The parents assert the juvenile court erred by finding the Department made reasonable efforts to rehabilitate them and reunite them with the children. We discern no basis for reversal.

### A.    Relevant Law

¶ 9    Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), a county department of human services must make reasonable efforts to rehabilitate parents and families. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts means the "exercise of diligence and care" to reunify parents with their children. § 19-1-103(114).

¶ 10 Services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard. § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b). Other services, including mental health and drug treatment, must also be provided if the county has sufficient funding. § 19-3-208(2)(d).

¶ 11 The juvenile court should consider whether the services provided were appropriate to support a parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. The parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). And the court may consider a parent's unwillingness to participate in treatment when determining

whether a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 12    Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the court's factual findings for clear error but review de novo its legal determination (based on those findings) as to whether the department satisfied its reasonable efforts obligation. *Id.*

### B.    Mother's Arguments

¶ 13    Mother asserts the Department failed to provide reasonable efforts in two ways — namely, that the Department (1) failed to accommodate mother's known disabilities and (2) failed to provide her with domestic violence services. We discern no basis for reversal.

### 1.    Accommodation for Mother's Issues

¶ 14    Mother argues that the Department refused to make accommodations for her post-traumatic stress disorder (PTSD) and complex trauma diagnoses and therefore failed in its duty to provide reasonable efforts.

¶ 15    The juvenile court found that the Department made reasonable efforts, but that the parents needed to engage and did not and there was "only so much that the Department can do when the parents aren't ready to address the underlying issues" that warranted the Department's intervention. There is record support for the court's findings.

¶ 16    Shortly before the termination hearing, mother filed a motion asserting she had qualifying disabilities under the Americans with Disabilities Act (ADA) and requested accommodations. The Department and guardian ad litem did not dispute mother's diagnoses but refuted that the diagnoses qualified for protections under the ADA. The court held a contested hearing on the motion. The court ultimately denied the motion. The court concluded, as relevant here, that the evidence did not show mother's symptoms limit one or more major life activities. In other words, mother's diagnoses were not so severe that they affected her ability to execute her treatment plan objectives, and the Department was already providing most of mother's requested accommodations.

¶ 17    Mother appears to assert that, regardless of the court's findings, the Department knew she had a substantial impairment

and failed to accommodate it in her treatment plan. However, the record reveals that the Department was already providing most of the general recommendations suggested by mother's expert based on her diagnoses and provided additional services where needed in its efforts to engage mother in her treatment plan. For example, many of the accommodations centered around repeated reminders of meetings and appointments, simplifying complex instructions in writing or verbally, and being consistent on follow through with meetings and services. The record supports that when mother's communication with the caseworker lapsed, the caseworker would attempt to call, text, email, and visit the home unannounced to regain contact.

¶ 18 Additionally, the Department provided three dual-diagnosis evaluation referrals for mother, one of which was closed for lack of engagement and the other two resulting in recommendations for treatment. Mother briefly engaged in treatment after the third referral but was later discharged from the program for failure to engage.

¶ 19 To address her trauma, the Department also provided mother with a list of trauma-informed therapists and allowed mother to

7

select her provider.  Mother did so but was discharged shortly thereafter for failure to engage, despite the caseworker's efforts to ensure mother had recorded the appointment times in her phone and planner.

¶ 20    When mother reported anxiety surrounding urinalysis (UA) testing, the Department offered her mouth swabs.  Despite this, mother continued to miss most of her substance use tests, once going ten months without providing any tests at all.  At the time of the termination hearing, mother had not provided any UAs for three months.

¶ 21    Although mother lived across the street from the testing facility, the Department provided bus passes to assist with transportation to the facility.  When mother did complete her UAs, she was often positive for illicit substances.

¶ 22    Mother further argues the Department significantly delayed in providing her a life skills worker referral.  However, the record reveals it was mother's failure to engage that prevented her from taking advantage of that service.

¶ 23    The caseworker made a referral for a life skills worker a month after mother initially requested one.  However, mother failed to

engage with the life skills worker until five months after the referral and was later discharged from the service for lack of engagement.

¶ 24 The record reveals that it was mother's unwillingness to engage in the services and treatment, and not the Department's lack of reasonable efforts or accommodations, that prevented her from successfully completing her treatment plan. *A.V.*, ¶ 12.

### 2. Domestic Violence Services

¶ 25 Mother argues that the Department also failed in its duty to make reasonable efforts because it failed to provide or include domestic violence services in her treatment plan objectives. Even assuming error, we discern no basis for reversal.

¶ 26 At the beginning of the cases, the juvenile court found that domestic violence was not a concern. When it later arose, referrals for domestic violence services were provided but neither parent engaged. But we acknowledge that the record reveals that domestic violence was described as a concern when these cases started and that the treatment plans were not initially crafted to specifically address those concerns.

¶ 27 For example, in a 2018 case, domestic violence was among the primary concerns that led to Department involvement. The

caseworker testified that when that case closed, the Department's domestic violence concerns were mitigated. But the petitions in both cases here identify domestic violence concerns.

¶ 28 Mother later alleged domestic violence was occurring in the home. Despite this, the parents' treatment plans were never amended. The caseworker testified that the Department was concerned that adding additional components to the parents' treatment plans — when they were already struggling to engage — would overwhelm them. Therefore, the goal was that the parents could address domestic violence via existing mental health components.

¶ 29 But despite the treatment plans not being amended, the caseworker repeatedly offered domestic violence resources to mother. She further attempted to coordinate multiple meetings between mother and a domestic violence program liaison. Mother repeatedly declined the resources and reported that those services were not needed and that she felt safe in the home. Thus, she canceled all related scheduled meetings. Additionally, family time services and monthly contacts with the Department were offered separately to each parent. The caseworker ultimately testified she

did not believe adding a domestic violence component to the treatment plan would have made the plan look any different.

¶ 30    Furthermore, as described above, substantial concerns surrounding mother's substance abuse and mental health remained at the time of termination.  As mother admits, she struggled to engage and had largely failed to make progress in almost every other component of her treatment plan.

¶ 31    So, if the failure to include domestic violence treatment in the parents' treatment plan was error, it was not reversible error. Based on the totality of the circumstances, we discern no reversible error in the court's finding that the Department provided reasonable efforts.  *My.K.M.*, ¶ 33

### C.    Father's Arguments

¶ 32    Father asserts that the Department failed to provide reasonable efforts because it did not assist with releases of information, providing a phone, family time, and father's illness.

¶ 33    The juvenile court found that the Department had provided reasonable efforts, that the parents failed to engage, and that the same issues that caused the Department's involvement remained at the time of termination.  The record supports the court's findings.

11

¶ 34    Though father argues that the Department failed to assist him in signing necessary releases of information as required by his treatment plan, the record contradicts this. The caseworker provided, and father signed, a release of information allowing the Department to speak with father's initial mental health provider. However, the release was a standard form from the Department, and the treatment provider refused to accept it; the provider required clients to sign a specific release of information. Therefore, father had to sign the release through his provider to allow the caseworker to speak with the provider. The caseworker followed up with father, his counsel, and the treatment provider to confirm whether he had signed the treatment-specific release of information, but it was never completed.

¶ 35    When father later switched providers, he failed to sign a release of information until weeks before the termination hearing. The caseworker reached out to the provider after obtaining the release, but never received a response. Ultimately, the caseworker was never able to confirm whether father received any mental health treatment. Notably, father does not argue he was engaged in or successfully compliant with his mental health treatment.

¶ 36    Father next asserts that the Department should have provided him with a phone and that the Department inappropriately contacted him through mother.

¶ 37    First, father cites to no law, and we are aware of none, that would require the Department to provide him with a phone.

¶ 38    Next, while the caseworker did testify that throughout much of the case she used a single phone number to speak to both parents, it was because the parents shared a phone. After father got his own number, it was difficult to remain in contact with him as he went through six phone numbers in less than a year without timely notifying the caseworker of the number change. When father was unresponsive, the caseworker would further attempt to reach him via phone calls, texts, emails, and unannounced visits.

¶ 39    Additionally, father argues that the Department should have provided him with one-on-one family time and assisted him in providing alternative healthy foods during family time. Notably, the record is devoid of any requests from father to split family time or assist with obtaining healthy food.

¶ 40    While the Department never split the children's visits individually, the Department did facilitate some visits where the

13

older two children would visit father and then the youngest child would have an individual visit. Father's own expert witness also testified that it would be important for a parent to demonstrate the ability to balance the needs of all children simultaneously. And, while the Department did not help with obtaining healthier food for the children during family time, the family had food assistance.

¶ 41 Finally, father argues that the Department failed to provide appropriate assistance with his ongoing illness. However, father does not describe what additional assistance was needed, other than arguing he should have been provided "more assistance."

¶ 42 The record reveals father was provided assistance that could have aided him amid his ongoing medical issues, but he failed to engage with or take advantage of those services.

¶ 43 At the beginning of the case, father reported he was connected with the appropriate medical providers. At some point in the case, father disengaged from medical treatment. When father requested to reconnect with medical providers, father was provided a life skills worker, who could have assisted in finding providers and scheduling appointments. Father was ultimately discharged from the service for failure to engage.

¶ 44    Additionally, while father's UA testing facility was across the street from his home, he was provided bus passes to assist in transportation to UAs.  When father reported anxiety about taking UAs, he was offered mouth swabs as an alternative.  Yet his engagement with the substance testing component of his treatment plan remained nearly nonexistent.

¶ 45    The caseworker regularly inquired of father regarding any potential barriers to treatment, and father reported no barriers that were not ultimately addressed.

¶ 46    The record reveals that father's unwillingness to engage, and not the Department's lack of reasonable efforts, prevented him from successfully completing his treatment plan.  *A.V.*, ¶ 12.

## IV.    Reasonable Time

¶ 47    The parents both assert that the juvenile court erred when it found they could not become fit parents within a reasonable period of time.  We disagree.  Mother characterizes her argument that she could have become fit within a period of six months as a less drastic alternative; however, we interpret this as a reasonable time argument and therefore address it as such.

15

## A. Relevant Law

¶ 48 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of S.K.*, 2019 COA 36, ¶ 74. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *Id.*

¶ 49 In determining whether a parent's conduct or condition is likely to change in a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 75. Where a parent has made little to no progress on a treatment plan, the juvenile court need not give the parent additional time to comply. *See People in Interest of A.N-B.*, 2019 COA 46, ¶ 34; *see also People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (noting that even "increased compliance" over the course of a case may not justify additional time).

¶ 50 A "reasonable time" is not an indefinite time, and it must be determined by considering the child's physical, mental, and

emotional conditions and needs. *A.N-B.*, ¶ 29. What constitutes a reasonable time is fact specific and varies from case to case. *Id.* at ¶ 40. However, where, as here, the child is under the age of six years old, the court must also consider the expedited permanency planning (EPP) provisions, which require the court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

## B. Mother's Arguments

¶ 51 The juvenile court found that the parents were unfit, that their conduct or condition was unlikely to change within a reasonable period of time, and that termination was appropriate based on the children's needs. The court further found that mother was not in compliance with her treatment plan and the same concerns that involved the Department with the family remained at the time of termination. There is record support for the court's findings.

¶ 52 Mother's arguments rely largely on her assertion that she was not provided reasonable efforts. We decline to address that assertion here because we have addressed it in depth above.

17

¶ 53    However, mother also argues that because she had successfully completed a treatment plan once before, she could do so again if provided reasonable additional time.

¶ 54    True, mother previously successfully completed a treatment plan in a prior case. However, the caseworker testified here that she was concerned that the changes seen in that case were not sustainable because the current cases opened shortly after the prior case's closure and were opened due to similar concerns about mother's substance use.

¶ 55    The caseworker also believed mother would need an additional year of active engagement in her treatment plan to become a fit parent. Mother had not shown consistent engagement with most of her treatment plan at any point in the case. Most notably, she continued to use illicit substances and failed to engage in therapeutic services, when substance abuse and mental health concerns were among the primary reasons the current cases had opened.

¶ 56    We recognize that, as mother asserts, her family time with the children was reported to be largely positive. However, at the time of termination, the family time coach would not recommend

unsupervised visits due to ongoing concerns about mother's sobriety, the sometimes chaotic nature of visits, and mother's failure to bring necessary supplies to family time.

¶ 57 At the time of the first termination, the older two children's case had been open for two years and the younger child's case for over a year and a half. The caseworker testified that the children could not wait an additional six months to a year for mother to become fit and that the children needed the permanency and stability that adoption would provide.

¶ 58 Because the record supports the court's determination, we may not disturb the judgment.

### C. Father's Arguments

¶ 59 As described above, the juvenile court found that the parents were unfit, that their conduct or condition was unlikely to change within a reasonable period of time, and that termination was appropriate based on the children's needs. The court further found that father was not compliant with his treatment plan.

¶ 60 Father argues the court erred when it found he could not become compliant with his treatment plan within a reasonable time. He appears to argue that he partially complied with his treatment

plan because (1) family time visits went well; and (2) he had stable housing, attended meetings with professionals, communicated with the Department when able, was receiving unemployment, completed an evaluation, and participated in UA testing which revealed primarily marijuana use.

¶ 61 The record reveals father's arguments either distort his engagement levels or are refuted by the record.

¶ 62 True, father's family time was largely described as positive. However, it was not without concerns. The family time supervisor testified she was concerned that father focused primarily on the older two children, while the youngest child was left alone. She was also concerned about father not being prepared for family time, the chaotic nature of some visits, and had concerns around the nutrition of the food brought for the children during family time. At the time of termination, the family time supervisor was still recommending supervised family time.

¶ 63 Likewise, father did not consistently have safe and stable housing. The caseworker testified that, during some home visits, the condition of the apartment was deplorable and there were unknown and potentially unsafe persons living in the home with

the parents. At one point during the case, and again at the time of the termination, there were concerns about the parents' facing eviction from their home.

¶ 64 Father did attend most meetings with the Department, but the caseworker testified that father was difficult to reach and that she ultimately did not believe father had been successful in maintaining communication with the Department.

¶ 65 While father completed an evaluation, he failed to provide the release of information to allow the Department access to that evaluation and failed to follow through with any of its recommendations.

¶ 66 Last, while the UAs father returned were primarily only positive for marijuana, father missed most of his UA tests. Because of this, the caseworker testified, she was unable to determine whether he was sober.

¶ 67 Because the record supports the court's determination, we may not disturb the judgment.

## V.    Disposition

¶ 68 The judgment is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.

21