23CA1971 Peo in Interest of LRS 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1971 Arapahoe County District Court No. 20JV540 Honorable Michelle A. Amico, Judge The People of the State of Colorado, Appellee, In the Interest of L.R.S., a Child, and Concerning G.L.A., Appellant. JUDGMENT AFFIRMED Division A Opinion by JUDGE GRAHAM* Román, C.J., and Richman*, J., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Ronald Carl, County Attorney, Tamra White, Assistant County Attorney, Aurora, Colorado, for Appellee Alison A. Bettenberg, Sheena Knight, Guardians Ad Litem Lindsey Parlin, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this dependency and neglect proceeding, G.L.A. (mother) appeals the judgment terminating her parent-child legal relationship with L.R.S. (the child). She contends that the juvenile court erred when it entered a disposition of no appropriate treatment plan. We perceive no basis for reversal and therefore affirm. I. Background ¶ 2 In October 2020, the Arapahoe County Department of Human Services filed a petition in dependency and neglect after mother brought the one-year-old child into the hospital with a broken tibia, bruising on and swelling of his genitalia, bruising on his back and over his left eye, and two other healing fractures. The child’s liver function was also impaired. Mother could not adequately explain the injuries and claimed that the child’s father had harmed him. The child was removed from the home, and the Department set up supervised family time between mother and the child. ¶ 3 The child was adjudicated dependent and neglected in January 2021, and the juvenile court entered a dispositional order that no appropriate treatment plan could be devised for mother. Mother appealed. Noting that no termination hearing had occurred, 
2 a division of this court dismissed mother’s first appeal for lack of a final, appealable judgment. See People in Interest of L.R.S., (Colo. App. No. 21CA0432, Nov. 18, 2021) (not published pursuant to C.A.R. 35(e)). ¶ 4 While mother’s first appeal was pending, the judge who entered this case’s initial orders resigned. After the resignation, the parties stipulated to a new adjudicatory and dispositional hearing, vacating the previous orders. Mother entered an admission to the petition in January 2022. ¶ 5 After a hearing, a second judge found that the Department and guardian ad litem (GAL) had proven that the child had been subjected to an incident of serious bodily injury (SBI) under sections 19-3-604(1)(b)(II) and 18-1-901(3)(p), C.R.S. 2023 (including experiencing “breaks” and “fractures”). Nevertheless, the court determined that the Department and GAL did not present evidence that no appropriate treatment plan could be devised to address mother’s unfitness. On the basis of the court’s findings, mother moved for a directed verdict, asserting that the Department and GAL had failed to meet their burden at the dispositional stage. The court granted mother’s motion. 
3 ¶ 6 The Department and GAL jointly petitioned the Colorado Supreme Court under C.A.R. 21, challenging the juvenile court’s order (joint motion). The supreme court reversed the order granting mother’s motion. See People in Interest of L.S., 2023 CO 3M, ¶ 29 (“[T]he legislature intended to allow trial courts to find that a parent is unfit and no appropriate treatment plan can be devised if the state shows that the child has suffered a ‘single incident resulting in serious bodily injury [SBI].’ The state need not also show that . . . no treatment plan can be devised to address the parent’s conduct that caused the SBI.”) (emphasis omitted). The case, which had been assigned to a third judge after the second’s recusal, then returned to the juvenile court. ¶ 7 In November 2022, mother pleaded guilty to misdemeanor child abuse with regard to the child’s injuries. Six months later, the Department moved for a finding and ordered that no appropriate treatment plan could be devised to address mother’s unfitness. After a seven-day hearing (no treatment plan hearing), the juvenile court granted the Department’s motion (no treatment plan order). 
4 ¶ 8 The Department then moved to terminate mother’s parental rights, which the court granted. In making its termination decision, the court relied on (1) expert testimony by the child’s physician from the no treatment plan hearing, (2) radiology images of the child’s broken bones that were described by the physician, and (3) “the entire [no treatment plan order].” II. Relevant Law and Standard of Review ¶ 9 Following adjudication, the juvenile court must consider a disposition that will serve the best interests of the child and the public. §§ 19-3-507(1)(a), -508(1), C.R.S. 2023. When the proposed disposition is not termination of parental rights, the court must approve an appropriate treatment plan for the parent. § 19-3-
508(1)(e)(I). In limited circumstances, however, the court may find that no appropriate treatment plan can be devised. See § 19-3-
604(1)(b). As relevant here, when determining the basis for unfitness, the court may find that there was a single incident resulting in SBI or disfigurement of the child. § 19-3-604(1)(b)(II). A court may conclude based solely on the evidence of SBI that no appropriate treatment plan can be devised, or it may accept additional evidence before deciding. L.S., ¶¶ 29, 32. 
5 ¶ 10 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. People in Interest of A.M. v. T.M., 2021 CO 14, ¶ 15. “We review the juvenile court’s findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support.” People in Interest of S.R.N.J-S., 2020 COA 12, ¶ 10. But we review de novo the court’s legal conclusions based on those facts. See id. III. Analysis ¶ 11 Mother contends that the juvenile court erred by finding at termination that no appropriate treatment plan could be devised. She asserts that her participation in voluntary services and expert testimony indicate a treatment plan could be created for her. We perceive no error. ¶ 12 During the no appropriate treatment plan hearing, the juvenile court found, with uncontroverted record support, that the child had suffered SBI. The court qualified a physician, who had been consulted with regard to the child’s injuries, as an expert in emergency medicine with an emphasis in child abuse pediatrics. 
6 The physician opined that the child’s injuries — including his previously broken bones — were nonaccidental and consistent with abuse. Despite this evidence of SBI, the court “elected to afford the opportunity for additional evidence to be presented” on the question of whether mother could be rehabilitated through an appropriate treatment plan. The court pointed out, however, that “the proof of a single incident of SBI” “carries significant weight in viewing the totality of the evidence.” After hearing the evidence, it concluded that no appropriate treatment plan could be devised to render mother fit to parent the child. The court, adopting its findings and order from the no treatment plan hearing, later found that termination of mother’s parental rights was in the child’s best interests. The record supports the court’s findings. ¶ 13 To be sure, the record shows that mother experienced some success in voluntary treatment and treatment through her probation while this case was pending. For instance, mother’s probation officer testified that mother was in regular phone and email contact, sometimes more than once a month. After mother moved to another county, she had another baby while this case was underway; the prevention caseworker in that county testified that 
7 mother “practice[ed] every safety measure that she needed to” with that baby. ¶ 14 Nonetheless, the record also shows that mother’s assertions about her success in treatment were sometimes inaccurate or incomplete. For example, the record supports mother’s assertion that she completed many parenting courses. Mother’s probation officer testified that mother had provided proof that she had completed the classes. However, the probation officer also testified that these classes — which mother admitted she actually completed before L.R.S.’s birth — did not address L.R.S.’s injuries “or accountability around this particular offense.” ¶ 15 Similarly, while mother’s assertion that the child was content during her in-person visits with him is supported by the record, other evidence suggests that the visits harmed the child. A family time supervisor testified that she observed that, during virtual visits, the child would cry excessively, hit his foster parents, rock back and forth, bang his head, and pull his own hair. The foster parents reported the same behaviors after visits with mother. At the termination hearing, the same caseworker identified these 
8 behaviors as “trauma effects” related to the child’s interactions with mother. ¶ 16 The probation officer and mother’s therapist both confirmed that mother was engaged in mental health treatment. The therapist testified that she had worked with mother for the past nine years, and that mother was on time for, and engaged during, their appointments. However, the therapist also testified that mother has “an underlying lack of trust with adults.” And the caseworker pointed out during her testimony that mother’s years of therapy had not prevented mother from abusing the child. ¶ 17 Finally, mother’s expert, whom the juvenile court qualified as an expert in social casework, child welfare, bonding and attachment, and development of treatment plans, opined that an appropriate treatment plan could be created for mother. But the expert did not consult mother or the current caseworker before making this claim. And the expert repeatedly admitted that mother would have “a lot of work to do.” ¶ 18 But the juvenile court may accept or reject expert testimony. See People in Interest of A.N-B., 2019 COA 46, ¶ 24. And in this case, the caseworker, also court-qualified as an expert in social 
9 work with an emphasis in child protection, challenged mother’s expert’s opinion. The caseworker opined that no appropriate treatment plan could be created. She testified that the child sustained multiple injuries at different times and mother “did not take accountability or responsibility as a parent.” At termination, she continued to opine that no appropriate treatment plan could be created for mother. ¶ 19 Because the record supports the juvenile court’s findings and it was within the court’s purview to consider, weigh, and resolve evidentiary conflicts, we will not disturb the court’s legal conclusions. See id. IV. Disposition ¶ 20 The judgment is affirmed. CHIEF JUDGE ROMÁN and JUDGE RICHMAN concur.