25CA1670 Peo in Interest of KB 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1670
El Paso County District Court No. 23JV30740
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Appellee,

In the Interest of K.J.B. and K.A.B., Children,

and Concerning A.D.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Kenny Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Sara B. Sonsalla, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, A.D. (mother) appeals the judgment terminating her parent-child legal relationships with K.J.B. and K.A.B. (the children).  We affirm.

## I.    Background

¶ 2    After receiving a referral because of a physical altercation between mother and the children's father, the El Paso County Department of Human Services (the Department) filed a petition in dependency or neglect alleging concerns of domestic violence and substance abuse.  The juvenile court granted the Department temporary custody of the children, and the Department placed them in foster care.

¶ 3    The juvenile court then adjudicated the children dependent or neglected and adopted a treatment plan for mother.  Mother's treatment plan required her to (1) cooperate with the Department; (2) consistently engage in family time; (3) complete a substance abuse assessment and follow all recommendations; (4) develop and demonstrate protective parenting capacity; (5) maintain a stable income and residence; (6) actively participate in life skills services; and (7) complete a mental health evaluation and follow all recommendations.

¶ 4    Thirteen months later, the Department moved to terminate mother's parental rights.  Two years after the Department filed the petition, the juvenile court granted the motion and terminated mother's parental rights.

## II.    Fitness Within a Reasonable Time

¶ 5    Mother's sole contention is that the juvenile court erred by finding that she could not become fit within a reasonable time.  We disagree.

## A.    Applicable Law and Standard of Review

¶ 6    The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2025.

¶ 7    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care.  *People in Interest of S.K.*, 2019 COA 36, ¶ 74.  Reasonable parental care requires, at a minimum, that the parent provide nurturing and

safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions. *Id.* A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 8 In deciding whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *S.K.*, ¶ 75. Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 9 A reasonable time is not an indefinite time, and it must be determined by considering the children's physical, mental, and emotional conditions and needs. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 34. What constitutes a reasonable time is fact specific and varies from case to case. *Id.* at ¶ 40. However, where, as here, a child is under the age of six years old, the court must also

consider the expedited permanency planning (EPP) provisions, which require the court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

¶ 10    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's findings of evidentiary fact for clear error and accept them if they have record support. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. But determining the proper legal standard to apply in a case and applying that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31. The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn therefrom are within the province of the juvenile court. *A.M.*, ¶ 15.

## B.    Analysis

¶ 11    The juvenile court found that, although mother was "very engaged" early in the case, she didn't reasonably comply with her treatment plan and was unfit. *See D.P.*, 181 P.3d at 408.

Specifically, the court found that in the months leading up to the termination hearing mother hadn't regularly attended family time; engaged in substance abuse, domestic violence, or mental health treatment; or provided documentation of her sobriety. *See People in Interest of K.T.*, 129 P.3d 1080, 1082 (Colo. App. 2005) (unfitness may be premised on a parent's failure to document sobriety). The court determined that mother's conduct or condition was unlikely to change within a reasonable time considering that the EPP case had been open for two years and the initial concerns remained unmitigated. *See S.Z.S.*, ¶ 24. And giving primary consideration to the children's physical, mental, and emotional conditions and needs, including their special needs, the court determined that it was not in their best interests to wait longer for permanency. *See A.N-B.*, ¶ 34.

¶ 12 The record supports the juvenile court's findings. The caseworker — who was qualified as an expert in child protection and child welfare — acknowledged that, early in the case, mother made progress on her treatment plan, and the Department had returned the children to her care. But three months later, mother relapsed, and the Department placed the children in a kin-like

5

placement where they remained for the remainder of the case. The caseworker testified that, following the children's removal, mother's substance abuse treatment provider discharged her multiple times for noncompliance. And during the last nine months of the case mother had not reengaged in substance abuse treatment, submitted urinalysis test results, engaged in individual or group therapy, or consistently engaged in family time. At the time of the termination hearing mother hadn't seen the children in person in four months and was "very inconsistent" in attending video visits.

¶ 13    Above all, the placement provider and caseworker described the children's particular needs. The placement provider testified that K.A.B. had been diagnosed with post-traumatic stress disorder, global development delay, and speech delay. And the caseworker testified that K.A.B. was in play therapy to address the trauma he endured, speech therapy, and occupational therapy, and K.J.B. was in occupational therapy for behavioral concerns. The caseworker opined that given the length of the case, the children's need for permanency and stability, and mother's lack of treatment plan compliance, mother was unlikely to complete her treatment plan in a reasonable amount of time.

¶ 14     Nevertheless, mother asserts that the juvenile court erred by making these findings because she (1) was limited in her ability to engage with her treatment plan in the months before the termination hearing due to a complicated pregnancy; (2) cared for her newborn with "no apparent safety concerns"; (3) had "previously been very successful" in her treatment plan; and (4) demonstrated a willingness to reengage in her treatment plan at the time of the termination hearing.

¶ 15     First, the court considered mother's argument that her pregnancy impeded her ability to comply with her treatment plan and found it to be incredible.  Second, while the court acknowledged that mother had custody of her newborn who "[l]ook[ed] well cared for," the court found that information was insufficient to establish that mother was a safe and appropriate parent.  And it was within the juvenile court's sole province, as the fact finder, to determine the credibility of the witnesses as well as the weight and probative effect of the evidence.  *See A.M.*, ¶ 15.  Moreover, the court recognized mother's treatment plan progress early in the case and acknowledged that she had recently expressed willingness to reengage, but ultimately the court found there was

not a substantial likelihood that mother would complete her treatment plan within a reasonable time for these children. Essentially, mother's argument asks us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29.

¶ 16 Because the juvenile court's findings are supported by the record, we discern no error.

### III. Disposition

¶ 17 The judgment is affirmed.

JUDGE J. JONES and JUDGE LUM concur.