25CA2386 Peo in Interest of KL-M 05-21-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2386
Weld County District Court No. 24JV47
Honorable Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.L-M., Bu.L-M., and Bi.L-M., Children,

and Concerning T.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greely, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1     T.L. (mother) appeals the judgment terminating her parent-child legal relationships with her children. We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services (the Department) filed a petition in dependency or neglect regarding then-seven-week-old triplets K.L-M., Bu.L-M., and Bi.L-M. (the children). The Department alleged concerns about mother's ongoing substance abuse and inconsistent contact with the children during a lengthy hospital stay following their premature birth.

¶ 3     The juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for mother. Among other things, mother's treatment plan required her to (1) collaborate with the caseworker; (2) identify and utilize a support network; (3) attend scheduled family time; (4) consistently attend the children's medical appointments and therapy sessions to learn about their specific medical needs; (5) complete a mental health intake and engage in any recommended treatment; and (6) achieve and maintain sobriety by completing a substance abuse assessment, following all

treatment recommendations, and complying with the Department's requests for drug testing.

¶ 4     Nine months later, the Department moved to terminate mother's parental rights. Following a hearing, the juvenile court granted the motion and terminated mother's parent-child legal relationships with the children.

## II.     Fitness Within a Reasonable Time

¶ 5     Mother asserts that the juvenile court erred by finding that she could not become fit within a reasonable time. We disagree.

### A.     Applicable Law and Standard of Review

¶ 6     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 7     An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of S.K.*, 2019 COA 36, ¶ 74. Reasonable parental

care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions. *Id.*

¶ 8 In deciding whether a parent's conduct or condition is likely to change in a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *Id.* at ¶ 75. A reasonable time is not an indefinite time, and it must be determined by considering the children's physical, mental, and emotional conditions and needs. *People in Interest of A.N-B.*, 2019 COA 46, ¶ 34. What constitutes a reasonable time is fact specific and varies from case to case. *Id.* at ¶ 40. Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 9 Where, as here, a child is under six years old at the time the petition is filed, the court must also consider the expedited permanency planning (EPP) provisions, which require the court to place the child in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

¶ 10    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the juvenile court's findings of evidentiary fact for clear error and accept them if they have record support. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn therefrom are within the discretion of the juvenile court. *A.M.*, ¶ 15. But whether the court correctly applied the proper legal standard to the facts of the case is a question of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

## B.    Analysis

¶ 11    The juvenile court found that mother was unfit, had not reasonably complied with her court-ordered treatment plan, and exhibited the same problems addressed in her treatment plan without adequate improvement. It also found that her conduct or condition was unlikely to change in a reasonable period of time. Specifically, the court found that mother had not "seriously address[ed]" her "major addiction issues" during the seventeen-month-long EPP case. *See S.K.*, ¶ 75; *S.Z.S.*, ¶ 24. And

4

above all, the court considered the children's physical, mental, and emotional conditions and needs and found that they needed permanency.

¶ 12    The record supports these findings. The caseworker testified that mother had only submitted around eleven of 167 required drug tests throughout the case. Her most recent test, taken six months before the termination hearing, was positive for fentanyl and amphetamine. The caseworker explained that, even though mother engaged in substance abuse treatment periodically during the case, she did not consistently attend, or complete, treatment. Specifically, mother (1) completed a substance abuse evaluation; (2) minimally attended intensive outpatient treatment before being discharged about seven months later for noncommunication and nonattendance; (3) scheduled, missed, and did not reschedule an intake appointment for in-home addiction therapy; and (4) stayed at an inpatient treatment facility for one day. The caseworker testified that mother did not "feel that the treatment was something that would be helpful for her and that she just needed to find a job or do something to keep herself busy, which would then help her stay sober." The caseworker reported, "Due to [mother's] unwillingness

[to] address[] her substance use issues, she [was] unable to make any progress on her treatment plan." *See S.Z.S.,* ¶ 24.

¶ 13    Moreover, both the placement provider — the children's paternal aunt — and the caseworker testified about the children's "high medical needs." Paternal aunt described (1) K.L-M.'s and Bu.L-M.'s feeding tubes, need for constant oxygen, and daily medications; (2) the children's frequent appointments with their primary care physician, specialty care clinic, ophthalmologist, pulmonologist, orthotic specialist, audiologist, and neurologist; (3) K.L-M.'s need for a cardiologist and ongoing medication and monitoring for tremors; and (4) the children's in-home therapy sessions, including physical and occupational therapy, four days a week. The caseworker discussed the children's ongoing physical therapy, occupational therapy, speech therapy, feeding therapy, and Bu.L-M.'s vision therapy.

¶ 14    Nevertheless, mother contends that she could have become fit within a reasonable period of time because "[e]ighteen months was simply not enough time" considering her ongoing efforts to "try to find the right fit for successful substance use disorder treatment." And she asserts that giving her more time "would not be

6

detrimental to [the children's] physical, emotional, or mental health needs." But the juvenile court considered mother's lack of consistent substance abuse treatment throughout the EPP case before finding that her conduct or condition was unlikely to change within a reasonable time "when viewed from the children's perspective." *See A.N-B.*, ¶ 34. Essentially, mother's argument asks us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See S.Z.S.*, ¶ 29.

¶ 15 To the extent mother also asserts that she could have become sober had she received assistance from the Department to overcome her transportation and housing barriers, such assertion is belied by the record. Indeed, the caseworker described her efforts to help mother overcome these barriers, including providing bus passes and housing resources at each meeting, emailing her the housing resources, submitting a referral for housing support case management, and encouraging mother to consider inpatient treatment and accept the offers of assistance from her support network. The juvenile court concluded that the caseworker was "very involved" in assisting mother with her transportation and housing barriers and went "above and beyond" to provide mother

support and encouragement during the case. And mother does not dispute these findings.

¶ 16 Because the record supports juvenile court's finding that mother could not become fit within a reasonable time, we discern no error.

### III. Less Drastic Alternative

¶ 17 Mother next asserts that the juvenile court erred by finding that there was no less drastic alternative to termination. We disagree.

### A. Applicable Law and Standard of Review

¶ 18 The consideration and elimination of less drastic alternatives are implicit in the statutory criteria for termination. *A.M.*, ¶ 40. In considering less drastic alternatives, a juvenile court must give primary consideration to the children's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. A juvenile court may also consider, among other things, (1) whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's fitness to care for the child's needs, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) whether the child is bonded with the parent, *see*

*People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); and (3) whether an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *see People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 19     For a less drastic alternative to be viable, it must do more than adequately meet the child's needs; it must be in the child's best interests. *A.M.*, ¶ 27. If a juvenile court considers a less drastic alternative but finds instead that termination is in the children's best interests, it must reject the alternative and order termination. *Id.* at ¶ 32.

¶ 20     "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Thus, when a juvenile court considers less drastic alternatives but instead finds that termination is in the children's best interests, we are bound to affirm the decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.     Analysis

¶ 21     The juvenile court considered less drastic alternatives to termination but found that no alternative short of terminating the parent-child legal relationships would adequately serve the

9

children's best interests. *See A.M.*, ¶ 32. In so finding, the court considered whether continuation of the parent-child legal relationship was in the children's best interests, the lack of a bond between mother and the children, the children's "high special needs" and their need for stability and permanency, and the placement provider's preference for adoption.

¶ 22 The record supports these findings. In addition to her description of the children's needs, detailed in section II.B. above, paternal aunt testified that she preferred adoption because she wanted the children to have some consistency and certainty, especially considering their unknown medical future and mother's inconsistent involvement in their lives. *See People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011) (a juvenile court may consider whether the caregiver favors adoption over an APR). Mother did not consistently attend family time during the case, had not seen the children in over a month at the time of the termination hearing, and had not attended any medical appointments for the children.

¶ 23 Similarly, the caseworker testified that mother's family time participation followed a pattern throughout the case where she

attended one or two visits before missing "weeks" of visits. *See N.D.V.*, 224 P.3d at 421. And even though the Department arranged for a nurse to provide specialized training to mother during family time sessions, mother did not engage and "struggled to care for the [children's] specific needs" during the family time sessions she attended. *See A.R.*, ¶ 38. Overall, the caseworker opined that termination was in the children's best interests.

¶ 24 Even so, mother asserts that the juvenile court erred because paternal aunt intended to continue mother's involvement in the children's lives even after termination, so "[t]here [was] no evidence that an allocation of parental responsibilities would result in instability for the children." But this argument ignores the juvenile court's finding, supported by the record, that the children needed "a very stable and permanent home" that "[could] never be disrupted" and that only adoption could provide. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) ("Permanent placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").

¶ 25    Because the record supports the juvenile court's finding that there was no less drastic alternative to termination, we cannot disturb it.  *B.H.*, ¶ 80.

## IV.   Disposition

¶ 26    The judgment is affirmed.

JUDGE HARRIS and JUDGE TOW concur.